# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. N. HENDRICKSON, Minor.

UNPUBLISHED
March 6, 2018

No. 339369
Ingham Circuit Court
Family Division
LC No. 16-000825-NA

Before: CAVANAGH, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his minor child, KH, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm). We affirm.

## I. RELEVANT FACTS AND PROCEEDINGS

In May 2016, petitioner, the Department of Health and Human Services, sought custody of KH following an alleged domestic violence incident between respondent and KH's mother that included a report that both parents were pulling on the child.[1] Petitioner further alleged that there were safety concerns in the home, that respondent had untreated mental health issues, a criminal history that included various drug charges, driving under the influence, disorderly conduct, retail theft, misdemeanor larceny, and misdemeanor domestic violence, and that he was a current methadone user. Following a preliminary hearing, the court authorized the petition, took custody of KH, and placed the child with petitioner for care and supervision. KH was given a non-relative placement, and respondent was afforded supervised visitation.

Respondent pleaded to the allegations in the petition at an adjudication hearing held in July of 2016. Subsequently, the trial court entered an order that required respondent to comply with his case service plan. Respondent's case service plan called for him to abstain from using

---

[1] Respondent denied this accusation. The record suggests that police arrested both parents, and that they remained in jail the following day, when the court held a preliminary hearing on the petition to remove. Respondent eventually pleaded no contest to a charge of domestic violence arising from the incident. KH's mother eventually released her parental rights to KH.

-1-

alcohol or illegal substances and to participate in psychological and substance abuse evaluations, drug screens, mental health services through Community Mental Health (CMH), parenting classes, and substance abuse services.

Dispositional review hearings held from August 2016 through April 2017 indicate that respondent made little progress toward removing the barriers to reunification with KH. In September 2016, the trial court entered an order requiring respondent to show cause why he should not be held in criminal contempt for testing positive for THC on two occasions and failing to appear for nine drug screens. Respondent admitted to testing positive on June 9, 2016 and August 19, 2016, and to missing several drug screens, a couple of which were missed due to his being an inpatient at the "crisis center" at CMH. The trial court sentenced respondent to a three-day suspended sentence. In October 2016, a caseworker from Bethany Christian Services stated that respondent had "been referred to parenting classes, CMH, substance abuse assessment and N[arcotics] A[nonymous] support groups which he's been non-compliant with." She also explained that respondent had been "let go" from a methadone treatment program at the Victory Clinic, that his attendance at parenting time was inconsistent, and that he had appeared disengaged during his last few parenting-time visits.

In January 2017, Caitlin Axline, a Foster Care Case Manager, explained that respondent had not attended parenting classes, had not verified his attendance at Narcotics Anonymous meetings or mental health services through the Justice and Mental Health Organization, and was homeless at the time. Axline asked the court to change the goal for KH from reunification to adoption, but the referee allowed respondent an additional review period to demonstrate progress. Later that month, the trial court entered another order requiring respondent to show cause why he should not be held in criminal contempt for testing positive for THC and Tramadol and failing to appear for 13 drug screens. At the show cause hearing, respondent pleaded guilty to using marijuana, and the trial court sentenced respondent to serve the three-day sentence the court had previously suspended.

At a combined review and permanency planning hearing held in April 2017, Axline stated that respondent had participated in only two drug screens during the three-month reporting period, had recently tested positive for heroin and morphine, and had been arrested for disorderly conduct and resisting arrest. Axline further reported that respondent had attended a mental health therapy session in March 2017, but that it was the first session he had attended since August 2016. She said that respondent still had not verified his attendance at AA or NA meetings and had been inconsistent in his attendance at parenting classes. Although homeless at the time of the hearing, respondent had obtained approval for housing through the Lansing Housing Commission, had completed an inpatient program at Henry Ford Allegiance Addiction Recovery Center, and planned to begin "intensive outpatient" treatment at Cristo Rey. At the conclusion of the hearing, the referee instructed petitioner to initiate proceedings to terminate respondent's parental rights, stating that respondent remained "inconsistent and essentially non-compliant with reunification services." On May 17, 2017, petitioner filed a supplemental petition requesting termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(i), (g), and (j).

At a June 28, 2017 termination hearing, Axline testified to the contents of a psychological evaluation conducted by Randall E. Haugen, Ph.D., and filed it with the court. Haugen

diagnosed respondent with schizoaffective disorder (bipolar type), cannabis use disorder (moderate), stimulant use disorder (mild), child neglect, and child psychological abuse. Haugen concluded that the prognosis for respondent's successful reunification with KH is poor because respondent's "problems are long-term and pervasive in nature." He further opined that if the trial court ordered reunification, respondent would need to maintain a consistent and responsible lifestyle, complete a substance abuse treatment program, have regular psychiatric care, and "develop an external support network to help him maintain sobriety," and he would need to demonstrate stability for at least six to nine months before reunification could be considered.

In addition, Axline reiterated respondent's inconsistent participation in the services provided by CMH and in parenting classes, his dismissal from the Victory Clinic, his numerous missed or positive drug screens, and his failure to verify attendance at AA or NA meetings and successful completion of the drug treatment program he participated in at Henry Ford Allegiance Addiction Recovery Center.[2] She also noted respondent's failure to participate in the domestic abuse program offered him. Axline acknowledged that respondent had a one-bedroom apartment but petitioner had not been able to determine whether it was suitable for KH. She stated that respondent and KH shared emotional ties as well as love and affection.

Respondent testified that he had obtained housing in June 2017, received Social Security income of $735 a month, had completed an inpatient treatment program at Allegiance, and attended AA meetings three to five times per week and counseling services through CMH every other week, although he acknowledged that he had not provided documentation of his attendance. Asked about his case at CMH being closed, respondent said, "I ended up showing up . . . so they rescheduled me . . . ." Respondent also admitted to using marijuana "a couple times in a week . . . if needed."

Ruling from the bench at the conclusion of the termination hearing, the trial court found that petitioner had met its burden to prove the existence of its stated statutory grounds for termination by clear and convincing evidence. Having found statutory grounds to terminate respondent's parental rights to KH, the trial court then found that termination was in the child's best interest. The court acknowledged respondent's love for his child and the emotional ties they shared, but noted that KH looked to his foster parents for love, guidance and support. The court noted that the child loves his foster parents and they love him, and that it appeared likely to become his adoptive home. Thus, the court concluded that it was in KH's best interest to have the stability he needed and was receiving in his foster home. The trial court entered a corresponding order that terminated respondent's parental rights.

---

[2] Pamela Long-Keel, an Associate Director for Project Stay at Justice in Mental Health, testified on respondent's behalf that he had approached her requesting inpatient treatment, that she had arranged treatment at Allegiance Health, and that she had seen the paperwork indicating that respondent had successfully completed the program.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a circuit court's decision to terminate parental rights under the clear error standard. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Under that standard, the trial court's decision must be "more than just maybe or probably wrong." *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000) (quotation marks and citation omitted). Regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

### B. STATUTORY GROUNDS

Respondent argues that the trial court erred in finding clear and convincing evidence to establish the statutory grounds for termination of his parental rights. We disagree.

Petitioner requested termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g) and (j). "To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). Although the trial court did not identify the grounds by their statutory designation, it described them by their content, and it is plainly apparent from the record that the trial court found that clear and convincing evidence established each statutory ground identified by petitioner. A trial court may terminate a parent's parental rights under MCL 712A.19b(3)(c)(*i*) if "182 days or more have elapsed since the issuance of an initial dispositional order" and the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Termination under MCL 712A.19b(3)(g) is proper if the "parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Termination under MCL 712A.19b(3)(j) is proper if there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent."

The record reveals that despite a case service plan designed to assist respondent in eliminating the barriers to reunification, respondent repeatedly failed to substantially comply with his service plan, leading to show cause hearings that ultimately resulted in a three-day jail sentence. It was not until the proceedings transitioned toward termination that respondent appeared to meaningfully begin to comply with portions of his case service plan. Respondent had recently obtained housing, although it had not yet been cleared as acceptable, and represented that he was attending AA meetings several times a week and had a sponsor, had been sober for approximately two months, was going to counseling at CMH, and was taking prescribed medication for depression. The trial court acknowledged that respondent had made

progress in these areas. However, the trial court accurately observed that respondent's progress was a recent development that came after a lengthy period of failure to comply with the case service plan, and that "there are things missing." It appears from the record that respondent had been homeless up until a few weeks before the termination hearing and that he provided no verification of his attendance at any support-group meetings, his participation in CMH services, or the fact that he had a new prescribing physician. Although the record shows that respondent appeared to be moving toward a more stable lifestyle by the time of the termination hearing, consistency had not been established. His psychological evaluation suggested that his problems were "long-term and pervasive in nature," and that he still needed six to nine months of actual stability before reunification could even be considered.

During the first ten months of his case service plan, respondent was discharged from a methadone program for failure to follow the rules, failed to participate in 63 drug screens, tested positive for drugs 14 times, and was twice held in contempt of court for violating the court's order to comply with his case service plan. In addition, respondent had been referred twice to CMH for mental health services, but CMH had reported his case closed because respondent had failed to attend counseling sessions. He had to be referred twice for a substance abuse assessment before he finally complied. Respondent's "failure to comply with the parent-agency agreement is evidence of [his] failure to provide proper care and custody for the child." *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

Our review reveals that the trial court's finding of a statutory ground for termination is supported by the record. Given the trial court's long involvement with respondent, and mindful of its special opportunity to assess the credibility of witnesses before it, MCR 2.613(C), we conclude that the trial court did not clearly err in finding that petitioner had established by clear and convincing evidence that respondent failed to provide proper care or custody and that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the child's age. MCL 712A.19b(3)(g). Respondent did not start making meaningful efforts toward complying with the case service plan until the eve of termination, and even then, it was not evident that his efforts were anything more than temporary. Because petitioner only needed to establish one ground for termination, we need not address whether the trial court properly found additional grounds. *In re Powers Minor*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

## C. BEST INTEREST

Respondent next argues that the trial court erred in finding that termination was in KH's best interests. Again, we disagree.

MCL 712A.19b(5) provides, "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." The petitioner must prove by a preponderance of the evidence that termination is in the best interests of the child. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013). Factors to consider include the child's bond to the parent; the parenting ability of the respondent; the child's need for permanency, stability, and finality; and comparison of the relative advantages of the parent's home and the child's foster home. *In re*

*Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The trial court may also consider "the length of time the child was in care, the likelihood that 'the child could be returned to [his] parents' home within the foreseeable future, if at all,' and compliance with the case service plan." *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), quoting *In re Frey,* 297 Mich App 242, 248-249; 824 NW2d 569 (2012). In addition, the court may consider "the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

Axline testified that respondent and KH do enjoy emotional ties and that respondent's supervised visits were "appropriate." While the trial court believed the respondent loves the child, the court also noted that the child was primarily looking to his foster parents for love, guidance, and support. A psychological evaluation of respondent described respondent as a person with a "low frustration tolerance, tendencies to be impulsive and a propensity to be increasingly aggressive in a parenting interaction as stress increases[,]" and recommended at least six to nine months of stability before reunification was even considered. KH was nearly four years old at the time of the termination hearing and had been out of respondent's care for more than a year. Axline testified that KH was doing very well in foster care and adoption by the child's foster parents was likely. In light of these factors, and given the child's need for permanency, stability, and finality, *In re Olive/Metts*, 297 Mich App at 41-42, we conclude that the trial court did not clearly err when it concluded that termination was in KH's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering